USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/8/12

UNITED STATES DISTICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
K.S. and S.S. individually,
And on behalf of L.S., a minor,

Plaintiffs,

-v.-

11 Civ. 7443 (DAB)

MEMORANDUM AND ORDER

THE NEW YORK CITY DEPARTMENT
OF EDUCATION,

Defendant.

-----------------------------------------X

DEBORAH A. BATTS, United States District Judge.

Plaintiffs K.S. and S.S. ("Plaintiffs"), on behalf of L.S., filed this action against the New York City Department of Education ("DOE") on October 19, 2011, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq., and the New York State Education Law, N.Y. Educ. Law §§ 4401, et seq. They are seeking reversal of an administrative decision of the State Review Officer ("SRO"), which denied private school tuition reimbursement for L.S. In the 2010-11 school year, Plaintiffs placed L.S. in the Rebecca School, a private, for-profit educational institution, and sought reimbursement of educational expenses from the DOE. Both Parties now move for summary judgment. For the reasons stated herein,

Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

### A. IDEA

The Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., allots federal funds for states that offer a "free and appropriate public education" ("FAPE") to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). The state must establish for each child an Individualized Educational Program ("IEP") that is "reasonably-calculated to enable the child to receive educational benefits." Gagliardo v. Arlington Central School Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982)). If the school district fails to supply a FAPE, the child's parent may seek tuition reimbursement for the child's placement in a private school. 20 U.S .C. § 1412(a)(10)(C)(ii).

New York receives federal funds under this statute, and the state charges Committees on Special Education ("CSEs"), which are established by local boards of education, with the responsibility of formulating the IEPs. N.Y. Educ. L. § 4402(1)(b)(1); 8 N.Y.C.R.R. 200.3(a). Each CSE is comprised of, among other members, the child's parent or guardian, the child's regular

education teacher, the child's special education teacher, and a school psychologist. 8 N.Y.C.R.R. 200.3(a)(1). The CSE shall also include "an additional parent member of a student with a disability residing in the school district or a neighboring school district, provided such parent is not a required member if the parents of the student request that the additional parent member not participate in the meeting[.]" 8 N.Y.C.R.R. 200.3(a)(1) (viii).

"New York parents who believe an IEP is insufficient under the IDEA may challenge it in an 'impartial due process hearing,' see 20 U.S.C. § 1415(f), before an [Impartial Hearing Officer ("IHO") ] appointed by the local board of education, see N.Y. Educ. L. § 4404(1)." Bd. of Educ. v. Mills, 2005 U.S. Dist. LEXIS 13741 at *3 (S.D.N.Y. July 8, 2005), (quoting Grim v. Rhinebeck Central Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003)). The burden of showing that the education plan is sufficient rests on the school district. See J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp.2d 386, 394 (S.D.N.Y. 2004) (quoting Rowley, 458 U.S. at 206-07) ("At this hearing and throughout the subsequent administrative and judicial appeals process, the school district bears the burden of proving by a preponderance of the evidence that: (1) it complied with the IDEA procedural requirements; and that (2) the IEP was 'reasonably calculated' to

confer 'educational benefits' on the students.") The non-prevailing party, furthermore, may appeal the initial decision for a state administrative proceeding, and that decision can be appealed to court. See 20 U.S.C. § 1415(g); N.Y. Educ. L. § 4404(2) ("The Impartial Hearing Officer's decision may be appealed to a [State Review Officer, ("SRO") ]"); Mills, 2005 U.S. Dist. LEXIS 13741 at *3-4 (citing 20 U.S.C. § 1415(i)(2)(A)) ([The SRO] "decision may be challenged in either state or federal court.")

## B. FACTUAL BACKGROUND

Except where noted, the following facts are undisputed. L.S., the son of K.S. and S.S., is a minor child, currently six-years old. (Pl.'s 56.1 Stmt. ¶ 3.) L.S., who was diagnosed with Angelman Syndrome at 11 months old, was classified by the DOE as a child with multiple disabilities, and entitled to a FAPE during the 2010-11 school year pursuant to the 20 U.S.C. § 1400 et seq., 20 U.S.C. § 1401 and New York State law. (Pl.'s Mem. Law in Supp. of Cross-Mot. for Summ. J. "Pl.'s Mem. Law" at 2; Pl.'s 56.1 Stmt. ¶ 3.) Angelman Syndrome is a neuro-genetic disorder characterized by intellectual and developmental delay, sleep disturbance, seizures, jerky movements - especially hand-flapping, frequent laughter or smiling and a usually happy demeanor. (Def.'s 56.1 Stmt. ¶ 1.) L.S. has motor delays that

cause him mobile difficulties throughout the day and limit his independence. (Pl.'s 56.1 Stmt. ¶ 6.) He navigates his environment by crawling, cruising along the wall, and walking with assistance. (SRO Decision at 2; Tr. at 190-91.)

On March 17, 2010, Plaintiffs attended a CSE meeting where an IEP was developed for L.S. for the 2010-11 school year. (Pl.'s 56.1 Stmt. ¶ 3.) Plaintiffs objected to certain provisions of the March 2010 IEP. (Tr. 200, 202.) As of June 3, 2010, Plaintiffs still had not received a placement for L.S. from the DOE. They wrote to the DOE stating that "to ensure a place for [L.S.] in case the DOE does not offer an appropriate program/placement[,]" they were required to sign a contract with the Rebecca School ("the School") and give a deposit. (Def.'s 56.1 Stmt. ¶ 5.) The deposit was $10,000.00, $2,500.00 of which was non-refundable and $7,500.00 of which was refundable should L.S. attend a public placement. (Pl.'s Mem. Law at 3.) On June 4, 2010, Plaintiffs signed the contract with the School, unilaterally enrolling L.S. there, and paid a $10,000.00 deposit to the School. (Def.'s 56.1 Stmt. ¶ 6.)

On June 14, 2010, the DOE offered Plaintiffs a September 2010 placement for L.S. in P141K @ P380K in Brooklyn, NY pursuant to the Final Notice of Recommendation ("FNR"). Plaintiffs and an advocate visited the recommended placement at P141k on June 25,

2010. (Def.'s 56.1 Stmt. ¶ 8.) On the same day, Plaintiffs wrote to the DOE rejecting the placement. Id. In that statement, Plaintiffs notified the DOE of their intention to send L.S. to the Rebecca School "[if] an appropriate program placement [was] not found for [L.S.] in a timely manner" and requested that the DOE arrange for busing to the School. Id.

On July 14, 2010, a CSE was reconvened in response to Plaintiffs' objections. (Def.'s 56.1 Stmt. ¶ 9.) The second CSE reviewed the March 2010 IEP and determined that its recommendations were appropriate. Id. CSE classified L.S. as a student with multiple disabilities, continued most of the March recommendations, and developed an IEP (the "July 2010 IEP"). Id. The July 2010 IEP recommended, among other things, that for the 2010-11 school year, L.S. attend a special 12:1:4 class in a specialized DOE school on a twelve-month basis and receive the assistance in school of a full time 1:1 health paraprofessional in and out of the classrooms. Id. It also recommended that he receives in school the related service of occupational therapy ("OT") (four sessions per week for 30 minutes each in a 1:1 student to therapist ratio), physical therapy ("PT") (four sessions per week for 30 minutes each in a 1:1 student to therapist ratio), and speech and language therapy ("S&LT") (five sessions per week for 30 minutes each in a 1:1 student to

therapist ratio), for a total of 6.5 hours per week. Id. The IEP contained no recommendation for a provision of home-based services. Id. Plaintiffs were informed that they would receive another proposed school placement in the mail. Id.

Plaintiffs filed an administrative due process proceeding against the DOE on July 15, 2010, seeking, as highlighted by Plaintiffs: (1) tuition reimbursement and direct payment to the School for L.S.'s tuition; (2) payment, in the form of Related Services Authorizations ("RSAs"), for home based services; and (3) payment in the form of RSAs for a 1:1 health paraprofessional provided to L.S. at the School. (Pl.'s 56.1 Stmt. ¶¶ 14, 15.) Plaintiffs were also seeking an interim order on pendency, pursuant to the stay-put provisions of the IDEA. Id.; See 20 U.S.C. § 1412(a)(12)(A); 20 U.S.C. § 1415(j); and 20 U.S.C. § 1439(b). On July 23, 2010, Plaintiffs wrote to the DOE objecting to the recommended 12:1:4 student to teacher to paraprofessional ratio and noted that they had not received another proposed placement. Plaintiffs stated that they were sending L.S. to the Rebecca School and requested that the DOE arrange for bus transportation. (Def.'s 56.1 Stmt. ¶ 11.) On August 10, 2010, Plaintiffs wrote to the DOE reiterating that they had yet to receive a placement and that they were sending L.S. to the School

for the 2010-11 school year. Again, Plaintiffs requested busing to the School. Id. at ¶ 12.

On September 28, 2010, an impartial hearing was held. After four days of testimony, the impartial hearing officer ("IHO") issued an Interim Order on Pendency, which directed the DOE to provide L.S. with (1) home-based instruction and therapy—sixteen hours per week of home-based special education itinerant teacher services ("SEIT"), (2) three 60-minute sessions per week of home-based 1:1 physical therapy, (3) four 30-minute sessions per week of home-based 1:1 speech and language therapy, (4) four 60-minute sessions per week of home-based 1:1 occupational therapy, and (5) 1:1 health paraprofessional, in and out of the classroom, for the entire school day—until the conclusion of all proceedings. (Interim Order on Pendency.) Pursuant to the order, the DOE provided these additional home-based services to L.S. Id.

L.S. began attending the School in September 2010, where he was placed in an 8:1:3 class. (McCourt Decl. Ex. A.) During the 2010-11 school year, L.S. received PT, OT, and S&LT from the School, which scheduled him to receive three half hour sessions and an additional quarter hour session of occupational therapy, three half hour sessions of speech therapy, and three half hour sessions of physical therapy, for a total of 4.75 hours of in-school related services per week. (Def.'s 56.1 Stmt. ¶ 16.) In

addition, the DOE continued to provide L.S. services pursuant to the IHO's Interim Order on Pendency. Id. at ¶ 17. At the impartial hearing, L.S.'s home-based service providers made clear that the home-based individual therapies provided by the DOE, nine hours per week in total, were essential to L.S.'s progress. Id. ¶ 19.

The IHO rendered an initial decision on April 4, 2011. (IHO Finding of Facts & Decision.) She found in favor of Plaintiffs, determining that (1) the DOE had not met its burden of establishing that it had offered L.S. a FAPE for the 2010-2011 school year, (2) Plaintiffs met their burden of establishing the appropriateness of the unilateral placement of L.S. in the Rebecca School for the school year, and (3) equitable consideration did not bar relief to the Plaintiffs. Id. The IHO ordered the district to pay for L.S.'s remaining tuition in the amount of $66,750.00 to the School and to reimburse Plaintiffs for the $10,000.00 deposit they had made for the 2010-11 school year. Id. The IHO also ordered the DOE to continue to provide the home-based services and 1:1 paraprofessional that it had been providing pursuant to the Interim Order on Pendency for the remainder of the 2010-11 school year. Id. The IHO stated, "[i]n addition to his entitlement as a procedural matter, I note that the Parent has established that [L.S.] continues to need the

services" and "[b]ased on my review of the record, I find that the aforementioned SEIT and related services continue to be a necessary component of [L.S.'s] special education program." Id. at 8.

The DOE appealed the decision of the IHO to the SRO, by Verified Petition dated May 9, 2011. (Def.'s 56.1 Stmt. ¶ 33.) In the petition, the DOE specifically noted that it was not "challeng[ing] the ruling that it failed to offer the Student a FAPE for the 2010-11 school year," but that "the Parents failed to establish that the Rebecca School was an appropriate placement for the Student and equitable considerations disfavor an award of tuition relief . . . ." (Def.'s Verified Pet. ¶ 6.) Plaintiffs submitted a Verified Answer dated June 2, 2011. (Def.'s 56.1 Stmt. ¶ 34.) In the pleadings, parties agreed that L.S. needed a full-time, 1:1 health paraprofessional. (Pl.'s 56.1 Stmt. ¶ 23.)

The SRO rendered a decision on June 24, 2011. (SRO Decision.) He found that Plaintiffs did not satisfy their burden in proving that the unilateral placement of L.S. at the School for the 2010-11 school year was appropriate and, accordingly, reversed the IHO's decision. Id. The SRO found that (1) the parents failed to meet their burden to establish the appropriateness of the student's unilateral placement at School for the 2010-11 school year and (2) there was no need to address

"whether the for-profit status of the School or equitable considerations preclude[d] relief in this circumstance." Id. at 11-12.

The SRO specifically noted that although the School's program incorporated the provision of PT, OT, and S&LT as components of its model to address L.S.'s educational needs, Plaintiffs introduced little evidence about how the related services provided by the School enabled L.S. to receive educational benefits. Id. at 7. First, the SRO found it unclear in the record whether L.S. received PT at the School consistent with his daily schedule or to what extent L.S. did not receive PT services upon the departure of the School's physical therapist. Id. at 8. Second, Plaintiffs provided limited evidence about L.S.'s OT services provided by the School. Id. at 9. Based on the home-based occupational therapist's testimony, the duration and frequency of the School's OT services were not sufficient to meet L.S.'s needs. Id. Third, based on the home-based speech-language pathologist's testimony, L.S. required five 45-minute sessions per week of S&LT service. The School, however, scheduled only three 30-minute sessions per week for him, and there is little evidence demonstrating how the School's therapy sessions adequately addressed L.S.'s educational needs. Id. at 11. "[W]here] the student's home-based providers believe[d] the

student requires additional related services in school," furthermore, "there [was] little objective evidence of how the Rebecca School personnel address[ed] the student's needs, and the hearing record show[ed] that the district, through the use of a 1:1 health paraprofessional, provide[d] a substantial portion of the support that the student requires in order to function in the Rebecca School." Id.

Plaintiffs commenced the current action on October 21, 2011. (Def.'s 56.1 Stmt. ¶ 39.) On March 8, 2012, Plaintiffs moved for summary judgment. (Pl.'s Mem. Law in Supp. of Cross-Mot. for Summ. J. "Pl.'s Mem. Law") Plaintiffs also included in the motion papers a request to supplement the record with the March 2012 Declaration of Tina McCourt, the program director at the Rebecca School.[1] (Def.'s 56.1 Stmt. ¶ 40.) In the Declaration, Ms. McCourt testified that L.S. continued to make progress through the individualized program at the School. (Pl.'s 56.1 Stmt. ¶ 38.) On April 17, 2012, Defendants moved for summary judgment. (Def.'s Mem. Law in Supp. of Mot. for Summ. J. & in

---

[1]Following the IHO decision, parties were notified that a portion of the January 4, 2011 testimony was not recorded. (Def.'s 56.1 Stmt. ¶ 32.) In response, Plaintiffs' counsel sent an email stating, "[I] wish to advise the [NYC] [D]epartment of [E]ducation that should they wish to reconvene a day of hearing in order to take testimony in a case that has already been decided, [I] will require a fee to cover my time associated with this hearing date." Id. at ¶ 31. An attorney for the DOE sent an e-mail to Plaintiffs' counsel informing him that it was a portion of Ms. Tina McCourt's testimony that had not been recorded. Id. at ¶ 32.

Opp'n to Pl. Mot. for Summ. J. "Def.'s Mem. Law")

## II. DISCUSSION

### B. The Summary Judgment Standard

A district court will grant summary judgment only when there is "no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine disputes of material fact cannot be created by mere conclusory allegations, and summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While a court must always "resolv[e] ambiguities and draw [ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins.

Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 252), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Establishing such facts requires going beyond the allegations of the pleadings, as it is the moment "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

These same standards apply where, as here, there are cross-motions for summary judgment. Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc., 88 F. Supp.2d 188, 193 (S.D.N.Y. 2000). A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Heublein, Inc., 996 F.2d at 1461 (quoting Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981)).

B. Judicial Review under IDEA

IDEA actions are generally resolved on summary judgment. See, e.g. S.H. v. N. Y. City Dep't of Educ., 2011 U.S. Dist. LEXIS 15864 (S.D.N.Y. Feb. 15, 2011); Thies v. N.Y. City Bd. of Educ., 2008 U.S. Dist. LEXIS 11354 (S.D.N.Y. Feb. 4, 2008). A federal court reviewing administrative proceedings under IDEA "shall receive the records of the administrative proceedings[,]" "shall hear additional evidence at the request of a party[,]" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(emphasis added).

Plaintiffs wish to supplement their motion with Ms. Tina McCourt's testimony, which had not been fully recorded at the IHO hearing, and two student progress reports, one dated December 2010 and one dated May 2011. (Pl.'s Mem. Law at 23-25.) The statutory language of 20 U.S.C. § 1415(i)(2)(C) provides clearly that such additional evidence shall be considered by a federal court. The Court, therefore, determines that such evidence should be included in Plaintiffs' application without the need to discuss whether it is a "particularized and compelling justification" as the DOE argues. (Def.'s Mem. Law at 17.)

"The Supreme Court and [the Second Circuit] have interpreted the IDEA as strictly limiting judicial review of state administrative decisions." Grim v. Rhinebeck Central Sch. Dist.,

346 F.3d 377, 380-81 (2d Cir. 2003), (citing Rowley, 458 U.S. at 204-08; Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998)). The reviewing federal court "must give 'due weight' to the administrative proceedings, mindful that the judiciary lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Grim, 346 F.3d at 381, (quoting Rowley, 458 U.S. at 206-08 (internal quotation marks omitted)). "Deference is particularly appropriate when ... the state hearing [officer's] review has been thorough and careful." Walczak, 142 F.3d at 129.

C. Tuition Reimbursement under IDEA

Parents who are dissatisfied with a school district's recommendations for their child for a given school year may place their child in a private school unilaterally and then seek retroactive tuition reimbursement from the local school district. 20 U.S.C. § 1412(a)(10)(C). The Supreme Court set out a three-step test to determine whether to award private school tuition funding under IDEA. School Comm. of Burlington v. Dep't of Ed., 471 U.S. 359, 370 (1985). The DOE is required to pay for a program selected by the parent only if (1) the IEP proposed by the school district was inappropriate, (2) the private placement

was appropriate for the child's needs, and (3) the equities support the parent's claim. Id. at 374.

On appeal, neither party contests the issue of whether the IEP proposed by the district was appropriate. Therefore, the first prong of the Burlington test is considered resolved in favor of Plaintiffs.

1. Appropriateness of the Unilateral Placement

The second Burlington prong, whether Plaintiffs' unilateral placement of L.S. at the Rebecca School was appropriate, is disputed by the parties. Under New York law, the burden of proof falls upon the parents to show that their unilateral placement at a private school was appropriate. See N.Y. Educ. L. § 4404(1)(c) (placing the burdens of production and persuasion as to the appropriateness of a unilateral placement on the parents); Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 58 (2005) (concluding that "the burden of persuasion lies where it usually falls, upon the party seeking relief"). Therefore, New York parents who believe that the state has failed to offer a FAPE act "at their own financial risk" when they choose to enroll their child in a private school. A.C. & M.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 171 (2d Cir. 2009) (citation omitted).

The standards for determining whether a private school placement is "appropriate" under the IDEA closely resemble, but do not mirror, the standards for assessing the adequacy and appropriateness of the proposed public placement. A.D. & M.D. ex rel. E.D. v. Bd. of Educ., 690 F. Supp.2d 193, 206 (2010). The Second Circuit has explained that "[s]ubject to certain limited exceptions, the same considerations and criteria that apply in determining whether the school district's placement is appropriate should be considered in determining the appropriateness of the parents' placement." Gagliardo, 489 F.3d at 112 (citation omitted). "The issue turns on whether a placement-public or private—is reasonably calculated to enable the child to receive educational benefits." Id. (citation omitted). A private placement meeting this standard is one that is "likely to produce progress, not regression," id. (citing T.P. Ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 254 (2d Cir. 2009)), and "[must] . . . afford [ ] the student with an opportunity greater than mere trivial advancement." T.P., 554 F.3d at 254. "Nevertheless, parents are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a free appropriate public education," and "[a]n appropriate private placement need not meet state education standards or requirements." Frank G. v. Bd. of Educ., 459 F.3d 356, 364 (2d Cir. 2006) (citing Florence County Sch. Dist. Four

v. Carter ex rel., 510 U.S. 7, 14 (1993)). To qualify for reimbursement under the IDEA, parents need not show that a private placement is perfect, however they need to demonstrate that the placement provides "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Rowley, 458 U.S. at 188-89 (emphasis added); see also Gagliardo, 489 F.3d at 115. "Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing the [placement]'s substantive adequacy." Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 195 (2d Cir. 2005).

Having reviewed the record in its entirety, the Court finds the SRO's decision to reflect careful consideration of the supporting record and arguments parties raised. Contrary to Plaintiffs' contention that the SRO failed to examine the "totality of the circumstances," (Pl.'s Mem. Law at 14.) the Court finds that the SRO conducted a thorough review and a thoughtfully reasoned analysis in determining whether the placement of L.S. at the School was appropriate. The SRO decision was based on a comprehensive review of supporting evidence from both parties, as well as a thorough analysis of

Plaintiffs' unilateral placement in the areas of full-time 1:1 health paraprofessional services, physical therapy, occupational therapy, and speech-language therapy. The SRO properly concluded in the appeal that, given L.S.'s extremely limited motor skills, the School's program, absent a necessary full-time 1:1 health paraprofessional as recommended, would not address adequately L.S.'s needs to "ambulate, attend, perform his [activities of daily living], and otherwise attend school safely." (SRO Decision at 6.)

Moreover, the Court may not choose "between the views of conflicting experts on a controversial issue of educational policy ... in direct contradiction of the opinions of state administrative officers who had heard the same evidence," Grim, 346 F.3d at 383, and is in no position to second-guess the SRO's expert determination of specialized questions concerning L.S.'s educational needs and the adequacy of the placement in addressing those needs. Plaintiffs fail to demonstrate that the School is equipped to provide the special related services necessary to meet L.S.'s educational needs, and while Plaintiffs' supplemental evidence demonstrates some progress that L.S. had made while registering at the School, it does not raise any probative issue in regard to how it might have altered the SRO's decision. In

fact, the SRO already discussed a substantial portion of Ms. Tina McCourt's testimony in his decision. (SRO Decision at 6-11.)

Plaintiffs' contention that the IHO's April 4, 2011 decision ordering the DOE to continue L.S.'s home-based services and the 1:1 paraprofessional for the remainder of the 2010-11 school year, bars the DOE from arguing that Plaintiffs failed their burden of proof under the second Burlington prong, constitutes a misunderstanding of the IDEA statute. (Pl.'s Mem. Law at 20.) The IDEA statute deals with three types of private school placements for children with disabilities. 20 U.S.C. § 1412(a)(10)(A) governs the situation when parents enroll their child at a private school for reasons other than provision of a FAPE. 20 § U.S.C. 1412(a)(10)(B) governs the situation when the school district refers or places the child in a private school to ensure that the child receives a FAPE. 20 U.S.C. § 1412(a)(10)(C), finally, governs the situation when the parents claim that the district has not made a FAPE available at the public school, enroll their child in a private school, and seek reimbursement due to the failure to provide a FAPE.

Here, it is clear that L.S.'s situation concerns the third type of placement when FAPE continues to be at issue. Plaintiffs apply 34 C.F.R. § 300.148(a) to support their argument. (Pl.'s

Mem. Law at 19-20.) That provision states, when FAPE is at issue, IDEA:

> does not require an [Local Education Agency] to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made FAPE available to the child and the parents elected to place the child in a private school or facility.

34 C.F.R. § 300.148(a).

This part of the regulation, however, establishes circumstances when the school district is not required to pay costs under the IDEA framework and the FAPE is at issue. Plaintiffs read the provision in isolation, ignoring an important provision of the regulations that qualifies the one mentioned above. The regulations go on to state:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.

34 C.F.R. § 300.148(c)(emphasis added).

This provision is fitting here, laying out when a school district will pay education costs under IDEA. While, as previously noted, the availability of the FAPE is not at issue here, the appropriateness of the placement is before the Court.

Plaintiffs cite 34 C.F.R. §§ 300.131-300.144 to further support their contention, but the referenced provisions are misplaced. (Pl.'s Mem. Law at 20.) Under the cited provisions, the school district must allocate a proportional share of federal IDEA funds to the private school placement which supplies the required special education and related services to the child. 34 C.F.R. §§ 300.131-300.144. The provisions, however, correlate to 20 U.S.C. § 1412(a)(10)(A) (i.e. a situation where parents place the child in private school despite no disagreement about the availability of a FAPE), not 20 U.S.C. § 1412(a)(10)(C), the situation before the Court, where the provision of a FAPE is at issue and parents subsequently place the child in a private school. Id.

The IHO's pendency order regarding the special educational supports, furthermore, was contingent on its finding that Plaintiffs had met the second Burlington criteria, and that finding is at issue here. (IHO Decision at 7.) The Court should not consider such services provided by the DOE as a part of the private placement in determining whether Plaintiffs met their burden of proof that their unilateral placement of the student was appropriate.

The Court must give the SRO's determination the deference it is due as the state agency's final determination on questions

within its particular expertise, including the adequacy of classroom staffing, the number of students to be placed in a classroom, and the educational supports necessary to address the student's specialized needs. See Walczak, 142 F.3d at 129. The Court, therefore, accords deference to the administrative findings that Plaintiffs failed their burden of proof that the unilateral placement was appropriate for the child's needs without the supplemental services provided by the DOE.

2. Equitable Considerations and State Claim

Because Plaintiffs fail to meet their burden of proof that the private school placement was appropriate for L.S.'s needs as required by the second Burlington prong, the Court does not need to reach the issue of equitable considerations. Thus, based the Court's application of the Burlington test, the circumstances do not support Plaintiffs' claim for relief.

Plaintiffs' also cite to State law, Pl.'s Mem. Law at 21, arguing that "under New York Law [the student] is entitled to a services plan and the implementation of the health paraprofessional, which he indisputably needs, while attending the School." Board of Educ. of Bayshore Union Free School District v. Thomas K., 14 N.Y.3d 289 (2010). Defendant rebuts this argument noting that, among other things, "there is nothing in the hearing record indicating that Plaintiffs requested an

[individualized education service program] pursuant to N.Y. Educ. Law § 3602-c, which is a necessary prerequisite to invoking the statute's benefits." (Def.'s Mem. Law at 14)(reference omitted).

The Plaintiff may well be barred from raising the claim at this stage, however, the Court declines to review this matter. Because the case fails on its federal claims, the Court "lack[s] . . . subject matter jurisdiction, concluding that the case raise[s] only questions of state law." Thomas K., 14 N.Y.3d at 292 (citing Bay Shore Union Free Sch. Dist. v. Kain, 485 F.3d 730 (2d Cir. 2007)).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to enter judgment for Defendants and to close the docket in this case.

SO ORDERED.

DATED: August 8, 2012
New York, New York

Deborah A. Batts
Deborah A. Batts
United States District Judge